UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YINJIE FAN,

    Plaintiff,                                         Civil Action No. 19-CV-11613

vs.                                                HON. BERNARD A. FRIEDMAN

FUYAO AUTOMOTIVE
NORTH AMERICA, INC.,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 27]. Plaintiff has responded and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

This is a pregnancy/sex discrimination case. Plaintiff, Yinjie Fan, is a former employee of defendant Fuyao Automotive North America, Inc. ("FANA"), an automotive glass manufacturer and subsidiary of the Fuyao Industry Group, Ltd. *See* Am. Compl. ¶¶ 7-8; Def.'s Summ. J. Br. at 2. Plaintiff alleges that on December 11, 2017, she was hired as a program manager at defendant's Plymouth, Michigan, location. *See* Am. Compl. ¶ 7. On or about April 27, 2018, plaintiff allegedly informed FANA president Shujun Wu that she was pregnant. *See id*. ¶ 12. Approximately three days later, Wu had allegedly "taken away all of Plaintiff Fan's accounts and re-assigned them to other Program Managers." *Id*. ¶ 13. In December 2018, plaintiff went on maternity leave, having successfully sought out other responsibilities at FANA (as a program manager and sales analyst) in the interim. *See id*. ¶¶ 14-17. On or about February 18, 2019, plaintiff returned to work. *See id*. ¶ 18. Plaintiff was allegedly denied her annual bonus for 2018 "without explanation" and was laid off in

March, one month after returning from maternity leave. *Id*. ¶¶ 19-20; Pl.'s Resp. Br. at 1. A colleague allegedly informed plaintiff that, although her performance had been good, "Wu was upset with Plaintiff for becoming pregnant soon after she was hired, and planned to fire her because of her pregnancy." Am. Compl. ¶¶ 21, 23.

Plaintiff's complaint contains three claims: pregnancy/sex discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") (Count I); unlawful retaliation in violation of the Family and Medical Leave Act ("FMLA") (Count II); and pregnancy/sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act (Count III). For relief, plaintiff seeks compensatory, liquidated, and punitive damages, as well as an injunction prohibiting defendant from engaging in similar acts in the future.

**I. Defendant's Motion for Summary Judgment**

Defendant seeks summary judgment on all of plaintiff's claims. In deciding a motion for summary judgment, the Court

> must view the evidence in the light most favorable to the party opposing the motion for summary judgment. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). "This includes drawing 'all justifiable inferences' in the nonmoving party's favor." *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson-VHS*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

In the instant motion, defendant contends that "Fan lacks any direct, admissible evidence of discrimination or retaliation, and the undisputed evidence, including admissions from Fan, demonstrate that FANA had a legitimate, non-discriminatory reason for [laying her off], thus requiring

2

dismissal as a matter of law." Def.'s Mot. at 1. Defendant essentially argues that Fan was an unmotivated and inexperienced employee whom FANA chose to lay off as part of a wider, financially-driven reduction in workforce. *See id*. at 3-12.

Defendant contends that "FANA was accommodating to every one of [plaintiff's] pregnancy-related requests," *id*. at 17; plaintiff was searching for alternative places of employment throughout her tenure at FANA, *see id*. at 4-5; plaintiff turned down opportunities at FANA and favored low-effort tasks, *see id.* at 7-8; and, rather than the result of discrimination, plaintiff was left without programs to manage in April of 2018 due to internal restructuring, which occurred prior to plaintiff telling Wu about her pregnancy.[1] *See id*. at 5-6. Defendant further argues that shortly after plaintiff was hired,

> nationwide auto sales were in a steep decline and [Original Equipment Manufacturers ("OEMs")] like General Motors and Ford announced major layoffs in August of 2018, followed shortly thereafter by other OEMs. FANA felt it too and did not obtain any new programs from OEMs.
>
> In the Fall of 2018, to stem financial losses,[4] FANA began laying off employees in all departments, including program management.
>
> _____
> [4] Earlier in 2018, FANA laid off additional employees "to reduce operation losses."

*Id*. at 9 (internal citations omitted). Defendant points to one program manager, Rehan Khan, who was terminated in October 2018 as a result of these downsizing efforts. *See id*.

In 2019, shortly after plaintiff's return from maternity leave, Zhenligh "Samuel" Chen, who oversaw FANA's program management personnel at the time, approached plaintiff about the

_____

[1] Defendant asserts that the restructuring of FANA's program managers occurred on April 23, 2018, two days before plaintiff allegedly told Wu about her pregnancy. Def.'s Summ. J. Br. at 6. Defendant adds that the restructuring occurred in an attempt to resolve program delays that had "generated significant customer complaints." *Id*. at 5.

3

possibility of switching back to her program management role and away from her pre-maternity leave sales analyst role – in effect, swapping responsibilities with plaintiff's colleague, Xinning "Nina" Hu. *See id*. at 11.  However, Wu allegedly informed Chen that FANA did not "have enough work for program managers.  So, we cannot keep both program managers in the company." *Id*. (quoting Def.'s Ex. 28 (S. Chen Dep.) at 10).  Defendant contends that Chen then decided to terminate plaintiff because she had less experience than Hu.  *See id*. at 11-12.

As to plaintiff's allegations regarding her withheld 2018 bonus, defendant argues that "FANA's failure to pay Fan [this] 2018 bonus was the result of a clerical error, and had nothing to do with discrimination."  *Id*. at 13 n.7.  Finally, defendant contends that plaintiff's colleague, Binwu "Phil" Chen, who informed her that "Wu was upset with Plaintiff for becoming pregnant soon after she was hired, and planned to fire her because of her pregnancy," Am. Compl. ¶ 23, subsequently "unequivocally testified that although he told Fan in a text message that Wu told him he wanted to fire Fan, [this text] was false; the conversation never happened and he was just 'bragging' to seem like he was privy to important information." Def.'s Summ. J. Br. at 15 (citing Def.'s Ex. 40 (P. Chen Dep.) at 23).  Defendant concludes that, particularly in light of the company's financial hardship at the time, it had a "legitimate, [non-]discriminatory reason for laying Fan off."  *Id*. at 25.

In response, plaintiff states that "[i]n its motion, FANA has elected to skirt or entirely ignore key evidence supporting Plaintiff's claims."  Pl.'s Resp. Br. at 1.  As to her experience and qualifications, plaintiff states that she has a master's degree in industrial engineering from Penn State University, and years of experience in "manufacturing, engineering, supply management, and program management."  *Id*. at 1, 4.  Further, plaintiff states that she only received positive feedback from her colleagues and supervisors regarding her performance at FANA.  *See id*. at 6, 11, 15.  Nonetheless,

4

plaintiff contends that after she informed Wu of her pregnancy,[2] he "stripped [her] of all her accounts/programs," swore at her when she asked why her accounts were taken away, and proceeded to "ignore[] her, refusing to even say hello." *Id*. at 7-8.

Plaintiff argues that Wu prevented her from transferring to different departments within FANA, despite requests from department directors, *see id*. at 11-12, and that she was repeatedly told that it was "'Wu's decision' that she be laid off." *Id*. at 13. Further, contrary to defendant's assertion that plaintiff's firing was part of a wider, financially-driven reduction in workforce, plaintiff notes that (1) the two project managers who were laid off during her tenure, including Rehan Kahn, were fired for "poor performance and/or misconduct," *id.* at 8, and (2) defendant posted two job advertisements shortly after plaintiff was laid off. *See id*. at 16. One position, "for a Sales/EDI specialist[3] – the job Ms. Fan had performed, and excelled at, for months" – was posted within six days of plaintiff being informed that she would be laid off, and the other position, for Program Manager – Fan's initial position at FANA – was posted a few weeks after plaintiff's last day. *See id*. Although plaintiff was still employed at FANA when the former position was posted, she was not considered for it. *See id*.

---

[2] Plaintiff notes that just prior to this exchange, "Wu announced that he (Wu) was now directly managing the Program [Manager] teams himself," and that she disclosed her pregnancy to Wu because she wanted permission to "eat a snack during [an] operations meeting [on April 25, 2018,] to counter her nausea." Pl.'s Resp. Br. at 6.

[3] Plaintiff adds that

> [Samuel] Chen interviewed a James Hutchinson for the Sales/EDI position, but instead decided to hire Mr. Hutchinson as a Program Manager although there is no evidence that Hutchinson had any PM experience. FANA confirms "there was a need" for a PM at that time. Wu approved Hutchinson's hire as a PM. Mr. Hutchinson was promptly provided with the Tesla, Rivion, and Hunda 2VH and 3 GM programs to manage.

Pl.'s Resp. Br. at 16-17 (citations omitted).

at 16 (citing Pl.'s Ex. O (S. Chen Dep.) at 23-25).

**II. Analysis**

All three claims contained in plaintiff's complaint – under the ELCRA (Count I), FMLA (Count II), and Title VII (Count III) – may be proven by direct or circumstantial evidence. The ELCRA prohibits treating "an individual affected by pregnancy, childbirth, or a related medical condition differently for any employment-related purpose from another individual who is not so affected but [is] similar in ability or inability to work." MICH. COMP. LAWS § 37.2202(1)(d). Title VII, as amended by the Pregnancy Discrimination Act, prohibits discrimination "because of sex," which includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015) (quoting 42 U.S.C. § 2000e(k)). Finally, the Sixth Circuit has stated that

> [t]he FMLA guarantees "eligible employees" twelve weeks of unpaid leave during any twelve month period for certain family or medical events, including childbirth. 29 U.S.C. § 2612(a)(1) (2000). The statute defines "eligible employee" as "an employee who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested . . . and . . . for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2)(A). The statute makes it unlawful for employers to interfere with, restrain, or deny these rights, 29 U.S.C. § 2615(a)(1), and to retaliate against employees who exercise them, 29 U.S.C. § 2615(a)(2).

*Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008).

Plaintiff's pregnancy/sex discrimination claims under the ELCRA and Title VII are evaluated under the same substantive standard. *See Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006) (stating that "federal and state pregnancy discrimination claims are evaluated generally under the same substantive standard"). "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least

a motivating factor in the employer's actions." *Jacklyn v. Schering-Lough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). If there is direct evidence of retaliation, then the plaintiff's case-in-chief is met, and the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Yazdian v. ConMed Endoscopic Tech., Inc.*, 793 F.3d 634, 648 (6th Cir. 2015).

If a claim is based on circumstantial evidence, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, plaintiff must show that

> 1) she was pregnant, 2) she was qualified for her job, 3) she was subjected to an adverse employment decision, and 4) there is a nexus between her pregnancy and the adverse employment decision. . . . If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its actions. If the defendant fails to satisfy this burden, plaintiff prevails. If the defendant satisfies this burden, then the presumption of intentional discrimination is negated; the employee must then prove by a preponderance of the evidence that the defendant intentionally discriminated against her. She may do this by showing that the "nondiscriminatory" reasons the employer offered were not credible, but were merely a pretext[4] for intentional discrimination.

*Cline v. Catholic Dioceses of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) (citations omitted). The Sixth Circuit has explained that establishing a "prima facie case is not meant to be an onerous burden, and the amount of evidence a plaintiff must produce on the elements is not great." *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 390 (6th Cir. 2005).

Plaintiff's FMLA retaliation claim is evaluated under a different standard than Counts

---

[4] The Sixth Circuit has stated that "[a] plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 484 (6th Cir. 2013).

I and III, but involves an overlapping set of facts. To establish a prima facie retaliation case under the FMLA, plaintiff must demonstrate that

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

Plaintiff presents both direct and circumstantial evidence in support of her claims. Plaintiff's only direct evidence of discrimination are statements made by her colleague Phil Chen. On multiple occasions, Chen told plaintiff that Wu was upset with her and wanted to fire her because of her pregnancy, and that Wu had a "prejudice" against plaintiff. *See* Pl.'s Resp. Br. at 15 (citing Pl.'s Ex. P. (P. Chen) at 42-43), 24. Although Chen does not deny making these statements, he now denies their veracity. Even if this evidence is discounted, however, plaintiff has presented enough evidence to establish a prima facie case under the ELCRA and Title VII, and to overcome a motion for summary judgment as to her FMLA retaliation claim.

It is undisputed that plaintiff was pregnant; she engaged in an activity protected by the ELCRA, Title VII, and the FMLA; her employer knew that she was exercising her rights under these statutes; and, shortly after exercising her rights thereunder, plaintiff was subjected to an adverse employment action (she was laid off). *See Asmo v. Keane, Inc.*, 471 F.3d 588. 593 (6th Cir. 2006) ("Temporal proximity can . . . satisfy the nexus requirement in the pregnancy discrimination context."). Whether there was a causal connection between plaintiff taking maternity leave and the adverse employment action, and whether defendant's stated reasons for laying off plaintiff are merely a pretext for intentional discrimination, are genuinely disputed issues of material fact that are best left for trial.

For example, while defendant contends that it laid off plaintiff as part of its need to downsize, this explanation might reasonably be questioned in light of the fact that, within days, defendant posted positions for which plaintiff was qualified. Additionally, while defendant indicates that it laid off plaintiff on the grounds that she was unmotivated and comparatively unqualified, this is contradicted by other evidence showing that defendant praised plaintiff for her work before she informed Wu of her pregnancy, that plaintiff had years of educational and on-the-job experience, and that defendant proceeded to hire an even more inexperienced replacement program manager shortly after laying off plaintiff. "Where, as here, there are two reasonable interpretations of the evidence, we must allow the jury to resolve the issue of whether the evidence [plaintiff] cites is sufficient evidence to conclude that [defendant unlawfully] retaliated against [her]." *Yazdian*, 793 F.3d at 649.

Viewing the evidence in the light most favorable to plaintiff, it is clear that defendant is not entitled to judgment as a matter of law. The Court shall therefore deny defendant's motion. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: July 26, 2021
Detroit, Michigan